UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILLOW MIDWIFE CENTER FOR
BIRTH AND WELLNESS AZ, LLC, and
WILLOW MIDWIFE CENTER FOR
BIRTH AND WELLNESS AZ CENTRAL,
LLC,

                               Plaintiffs,

        v.

INNOVATION BILLING SERVICE, INC.,
REVASCENT, LLC and MEDICAL
PRACTICE MANAGEMENT &
CONSULTING, LLC

                             Defendants.

FIRST AMENDED COMPLAINT

Case No. 3:24-cv-30150

## **FIRST AMENDED COMPLAINT**

The Willow Midwife Center for Birth and Wellness AZ, LLC and the Willow Midwife Center for Birth and Wellness AZ Central, LLC (together, "Willow Midwife") bring this action for damages arising out of Innovation Billing Services, Inc.'s ("Innovation"), Revascent, LLC's ("Revascent"), and Medical Practice Management & Consulting, LLC's ("MPM Consulting") breach of contract, unfair and deceptive conduct, and misrepresentation, which have caused Willow Midwife to suffer direct financial damages of approximately $1.35 million and threatened its ability to provide critical pregnancy- and birth-related medical services to its patients.

In early 2024, Innovation abruptly transitioned its billing service responsibilities under its contract with Willow Midwife to Revascent, which lacked experience in midwifery billing. Despite representations to the contrary, the transition of billing services to Revascent resulted in

severe disruptions to Willow Midwife's ability to collect revenue.  Over the course of approximately nine months, Innovation and Revascent failed to bill, and failed to properly bill, for more than $1.5 million worth of medical services rendered by Willow Midwife to its patients.

## INTRODUCTION

1.      Willow Midwife provides critical pregnancy- and birth-related medical services to its patients.  Willow Midwife specializes in women's health, and provides comprehensive, individualized pregnancy and wellness care.

2.      In 2019, Willow Midwife contracted with Innovation Billing Services, Inc. to obtain billing services for the medical care that Willow Midwife provides to its patients (the "Contract").

3.      Effective December 31, 2023, Innovation and Revascent, LLC entered into an asset purchase agreement (the "Agreement") whereby some or all business units of Innovation began operating as part of Revascent and Innovation's existing contracts were acquired by Revascent.

4.      Prior to the execution of the Agreement, Innovation did not indicate to Willow Midwife that its contract would be assigned to Revascent.  Rather, as recently as December 2023, Innovation represented to Willow Midwife that Innovation would continue servicing the accounts.

5.      In early 2024, Innovation informed Willow Midwife of the transaction and represented to Willow Midwife that, due to this transaction, the billing services formerly provided by Innovation would need to be transitioned to Revascent.

6.      During the transition, Innovation provided assurances to Willow Midwife that the Innovation employees that had been servicing Willow Midwife's account would remain in their roles, that Revascent would be providing additional billing support to the existing team, and that

the level of service that Willow Midwife was receiving under its existing Contract with Innovation would not change.

7.      On information and belief, the representations made by Innovation to Willow Midwife reflected representations that Revascent had made to Innovation about its ability to perform midwifery billing services and which Innovation failed to properly investigate or verify.

8.      At the time Innovation made these representations, Innovation's employees worked on behalf of Revascent pursuant to the Agreement.

9.      During the transition, Innovation and Revascent represented that the transition would not change the level of service that Willow Midwife was receiving under its existing Contract with Innovation.

10.     Although neither Innovation nor Revascent provided written notice to Willow Midwife that Innovation's contractual obligations had been assigned to Revascent, Revascent began performing Innovation's obligations under the Contract.

11.     Despite representations to the contrary by Innovation and Revascent, Revascent was unable to perform its obligations under the Contract.

12.     During the transition, several of the Innovation employees that had been servicing Willow Midwife's account left and the Revascent employees that replaced them and were assigned to Willow Midwife's account lacked the appropriate training and expertise to perform Innovation's responsibilities under the Contract.

13.     At no point during the transition did Revascent or its employees have appropriate training or expertise to perform Innovation's responsibilities under the Contract.

14.     Innovation and Revascent have breached the Contract by failing to bill, and failing to properly bill, for more than $1.5 million worth of medical services rendered by Willow Midwife to its patients.

15.     As a result of Innovation's and Revascent's breach, and despite having a thriving practice, Willow Midwife has suffered severe financial harm that is currently threatening to bankrupt the company.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties to this suit are citizens of different states and the amount in controversy exceeds $75,000.

17.     The Contract is governed by the law of Massachusetts and designates "the State or Federal Courts located in Massachusetts as the sole and exclusive forum" for disputes arising out of the Contract.

18.     Both Innovation and Revascent have consented to personal jurisdiction in the District of Massachusetts as stated in the Contract.

19.     Venue is proper in the District Court of Massachusetts under 28 U.S.C. § 1391(b)(3) because both defendants have consented to personal jurisdiction in Massachusetts, and defendant Innovation is a Massachusetts company with a principal place of business in Massachusetts, and is therefore subject to general personal jurisdiction in Massachusetts.  Due to the forum selection clause in the Contract, there is no other judicial district in which this action may be brought. *See* U.S.C. § 1391(b)(3).

## PARTIES

20.    Plaintiffs Willow Midwife Center for Birth and Wellness AZ, LLC and Willow Midwife Center for Birth and Wellness AZ Central, LLC are both Arizona companies.

21.    Willow Midwife Center for Birth and Wellness AZ, LLC has a principal place of business at 2045 S. Vineyard #136, Mesa, AZ 85210, and all of its members reside in Arizona.

22.    Willow Midwife Center for Birth and Wellness AZ Central, LLC has a principal place of business at 1197 E Oak Street, Phoenix, AZ 85006, and all of its members reside in Arizona.

23.    Defendant Innovation Billing Service, Inc. is a Massachusetts corporation with its principal place of business at 131 West Main Street, Suite 322, Orange, MA 01364.

24.    Defendant Revascent LLC is a Delaware company with a principal place of business at 2 East Bryan Street, Fourth Floor, Savannah, GA 31401.

25.    On information and belief, none of Revascent LLC's members reside in Arizona.

26.    Defendant MPM Consulting LLC is a New Hampshire company with a principal place of business at 94 Crooked S Road, Lyndeborough, NH 03082.

27.    On information and belief, MPM Consulting LLC's sole member is Marnie Cabezas, and none of MPM Consulting LLC's members reside in Arizona.

## FACTUAL BACKGROUND

### A.    The Contract and Its Terms

28.    As a medical service provider, Willow Midwife collects the majority of its revenue from third-party payers like Medicaid, Medicare, and private insurance companies, rather than directly from its patients.

5

29.     Beginning in November 2019, Willow Midwife signed the Contract with defendant Innovation to obtain billing services to support its practice.

30.     A true and accurate copy of the Contract is attached as Exhibit 1.

31.     Innovation specialized in billing services for midwife practices such as Willow Midwife.  The owner and CEO of Innovation, Marnie Cabezas, is herself a former midwife with experience in providing billing services and credentialing services for midwife practices.

32.     Innovation's principal place of business is Orange, Massachusetts and most of its employees servicing Willow Midwife's accounts worked in Massachusetts.

33.     Willow Midwife decided to contract with Innovation and Ms. Cabezas because of their specialized expertise in providing billing and credentialing services in Willow Midwife's practice area.

34.     Familiarity with the pregnancy- and birth-related services Willow Midwife performs is critical to providing adequate billing support due to the specialized and complex logistics involved in billing Medicare, Medicaid, and private insurance companies for those services.

35.     Innovation drafted the Contract.

36.     Section I of the Contract (titled "Scope of Billing Services") obligated Innovation to—among other things—process and submit requests for payment on Willow Midwife's behalf to "Designated Payers" (including Medicare and insurance companies) within fifteen business days, and to follow up on unpaid or outstanding claims until the claims were finalized.

37.     Section I of the Contract also obligated Innovation to "provide all documentation for authorizing electronic claims submissions," which includes providing maintenance of credentialing of Willow Midwife's providers.

38.     Beginning as early as 2020, Ms. Cabezas was responsible for establishing and maintaining proper credentials for Willow Midwife's providers with third-party payors.

39.     Ms. Cabezas invoiced for these credentialing services under MPM Consulting LLC.

40.     The Contract further obligated Innovation to track and apply payments from Designated Payers to patient accounts, and to bill any remaining balance to Willow Midwife's patients or their guarantors.

41.     Innovation also agreed to answer patient questions regarding billing and insurance benefits, and complete "Maternity Benefits Verifications" at patients' request to analyze the patient's insurance coverage and estimate out-of-pocket expenses for services performed by Willow Midwife.

42.     In exchange, Willow Midwife is obligated under the Contract to pay billing and administrative fees as described in Section IV of the Contract.

43.     Among other things, Willow Midwife pays as billing fees a percentage of payments recouped from Designated Payers or received from patients or their guarantors.  Willow Midwife also pays administrative fees including a monthly data maintenance fee and an hourly fee for specific services.

44.     The Contract had an initial term of one year, and automatically renews for additional one-year periods absent written notice from either party that that party does not intend to extend the agreement.

45.     Either party may also terminate the Contract, with or without cause, upon thirty (30) days written notice to the non-terminating Party.

46.     Because neither party provided written notice saying otherwise, the Contract automatically renewed in November 2023 for a one-year period, and was therefore in effect at all times relevant to this dispute.

47.     All notices and other communications under the Contract require written notice to the other party.

**B.     Transfer to Revascent and Subsequent Breach**

48.     Effective December 31, 2023, Innovation and Revascent entered into the Agreement, whereby some or all business units of Innovation began operating as part of Revascent and Innovation's existing contracts were acquired by Revascent.

49.     That transaction was centered in Massachusetts.

50.     The Agreement's choice of law and venue provision is Massachusetts.

51.     In January 2024, Ms. Cabezas informed Willow Midwife that Innovation was being sold to, and becoming a division of, Revascent.

52.     Ms. Cabezas did not disclose the sale of Innovation until after Innovation and Revascent executed the Agreement and immediately before the transition of services to Revascent began.  Before that point, Willow Midwife had no indication that its billing service provider might change in the near future.

53.     In December 2023, Innovation represented to Willow Midwife that Innovation would continue servicing the accounts in the future and presented its plans for providing billing services in 2024.

54.     At no point did Innovation or Revascent provide written notice that it was amending the Contract to reflect that Innovation's contractual responsibilities had been assigned to Revascent.

8

55.     Ms. Cabezas assured Willow Midwife that despite the transition, Willow Midwife would continue to receive the same level of support and service, there would be no impact to Willow Midwife's ability to collect revenue, and the Innovation team that had been servicing Willow Midwife's account would remain the same.

56.     Innovation represented that the transition of services to Revascent would provide additional support to the existing team that was servicing Willow Midwife's account.

57.     When Innovation made these representations, Innovation worked on behalf of Revascent to transition billing services under the Agreement.

58.     On information and belief, these representations reflected Revascent's own incorrect representations to Innovation about its experience and ability to perform the necessary billing services and provide resources to service Willow Midwife's account.

59.     Based on these representations, Willow Midwife did not seek out a replacement billing company and continued performing its obligations under the Contract by paying the billing and administrative fees to Revascent.

60.     During the transition, Innovation's employees, including employees located in Massachusetts, continued servicing Willow Midwife's account and worked on transitioning services pursuant to the Agreement.

61.     During the transition, several of the Innovation employees that had been servicing Willow Midwife's account left Innovation.  The new Revascent employees that were assigned to Willow Midwife's account lacked the lacked the appropriate training and expertise to perform Innovation's responsibilities under the Contract for billing midwife services.

9

62.     On information and belief, Revascent and Innovation failed to retain employees assigned to Willow Midwife's account and/or properly train employees in a manner that would allow continued performance of the billing services required under the Contract.

63.     After the transition, neither Innovation nor Revascent provided the services required under the Contract.

64.     The staff Revascent and Innovation assigned to handle Willow Midwife's account was unable to properly process and bill for Willow Midwife's services.

65.     The staff members assigned to Willow Midwife's account kept changing, so that Willow Midwife was not aware of who was supposed to be handling their account, and in particular who at Revascent had supervisory authority over the team handling the account.

66.     Starting shortly after the transition of billing services to Revascent in early 2024, Willow Midwife noticed a significant increase in the number and amount of patient accounts that were more than 30 days past due.

67.     By April 2024, Innovation and Revascent had failed to bill for hundreds of thousands of dollars in medical services rendered by Willow Midwife to its patients, despite Innovation's and Revascent's obligation under the contract to bill for those services within fifteen business days.

68.     Innovation and Revascent also failed to properly bill for medical services rendered by Willow Midwife to its patients, for example by using incorrect billing codes, billing to the incorrect medical providers, failing to ensure the proper credentialing of providers, and failing to rectify or address these errors.

69.     In many instances, Innovation and Revascent improperly "wrote off" valid claims without Willow Midwife's approval.

10

70.    On information and belief, Innovation and Revascent improperly "wrote off" these valid claims to avoid performing its obligations under the Contract, or to disguise the fact that it had failed to timely bill claims.

71.    To the extent that credentialing errors contributed to Innovation and Revascent's failure to properly bill for Willow Midwife's medical services, those errors were caused by Ms. Cabezas, who was responsible for credentialing since at least 2020.

72.    Willow Midwife notified Innovation and Revascent that they were in breach of the Contract in April 2024.

73.    On June 21, 2024, Willow Midwife's owners and founders, Diane Ortega and Belinda Smith, met with representatives from Revascent, including Jessica Whitney and Abby Arnold, to discuss Innovation's and Revascent's failures to comply with their obligations under the Contract.

74.    During the call, representatives from Revascent acknowledged that they had mismanaged Willow Midwife's account, and accepted responsibility for the billing issues Ms. Ortega and Ms. Smith raised.

75.    Innovation and Revascent offered a plan to bring Willow Midwife's billing current, and represented that it had both the workforce and the knowledge required to do so.

76.    Revascent further offered to provide four months of service at no charge to Willow Midwife.

77.    Based on the representations that Willow Midwife's account would be corrected, Willow Midwife continued to use Innovation's and Revascent's billing services.

78.    Between June and September 2024, Innovation and Revascent failed to remedy the issues with its performance of the Contract.  Innovation and Revascent continued to fail to

11

correctly bill for the services that were performed prior to the June 21 meeting, and also failed to correctly bill for new services performed after the June 21 meeting.

79.    Willow Midwife scheduled meetings with Innovation and Revascent staff to discuss the ongoing breach on September 13, 16, and 18, 2024.  Innovation and Revascent cancelled the first two meetings, and failed to attend the third one.

80.    As of September 19, 2024, Innovation and Revascent had failed to properly bill for more than $1.5 million in services performed by Willow Midwife.

81.    Despite its attempts to mitigate damages, including by following up on the late claims that Innovation and Revascent had failed to properly bill, Willow Midwife was only able to recover a fraction of its losses.

82.    Due to the nature of its billing agreements with insurance providers, Willow Midwife is unable to recoup further payment for the services it provided to patients.

83.    As a direct result of Innovation's and Revascent's failures to bill for services, Willow Midwife's cashflow has been severely restricted.  As a result, and despite the fact that Willow Midwife's business continues to thrive, Innovation's and Revascent's failures to bill for services has placed Willow Midwife in a precarious financial position.

84.    Ms. Ortega and Ms. Smith have had to take drastic measures to keep their business running, including refinancing their private homes and making withdrawals from their retirement accounts in order to pay their staff.

85.    Since November 2019, Willow Midwife has paid more than $1 million in fees under the Contract.

## COUNT I
## Breach of Contract

86.     Willow Midwife realleges and incorporates by reference the allegations contained in the above paragraphs.

87.     The Contract is supported by valid consideration and is binding and enforceable, with the exception of the purported limitation of liability provision in Section VI(h).

88.     Willow Midwife performed its obligations under the Contract, and was ready, willing, and able to perform until it terminated the Contract in September 2024.

89.     Defendants breached the Contract by failing to perform their obligations to timely process and submit bills for Willow Midwife's services, to properly bill for Willow Midwife's services, and to properly maintain credentialing of Willow Midwife's providers.

90.     As a result of Defendants' breach, Willow Midwife has suffered direct financial damages of approximately $1.35 million.

## COUNT II
## Unfair or Deceptive Act under G.L. c. 93A, §§2, 11

91.     Willow Midwife realleges and incorporates by reference the allegations contained in the above paragraphs.

92.     Defendants committed unfair or deceptive acts in the conduct of trade or commerce as defined by G.L. c. 93A, § 2, including:

   a.  Failing to disclose the sale of Innovation to Revascent until shortly before the transition of Willow Midwife's billing services under the Contract;

   b.  Failing to provide any written notice regarding Revascent's assumption of Innovation's obligations under the Contract;

13

c.  Misrepresenting that Revascent had the experience and ability to provide adequate service and support under the Contract, including representations made by Innovation while working on behalf of Revascent and which Revascent knew Innovation's clients would rely upon;

d.  Misrepresenting Innovation's and Revascent's ability to perform the obligations under the Contract during and after the transition of services, including falsely representing that Willow Midwife would continue to receive the same level of service and support under the Contract and that Innovation employees assigned to Willow Midwife's account would remain in their roles;

e.  Misrepresenting Innovation's and Revascent's ability to rectify the failure to bill for Willow Midwife's services, including but not limited to during the June 21, 2024 meeting; and

f.  Knowingly writing-off valid claims without Willow Midwife's approval to avoid performing or disguise its failure to perform its obligations under the Contract.

93.  Innovation, Revascent, MPM Consulting, and Willow Midwife are all "person[s] who engage[] in any trade or commerce" as defined in G.L. c. 93A, § 11.

94.  Innovation's unfair or deceptive conduct occurred primarily in Massachusetts because Innovation's misrepresentations about the transition of services to Revascent were made from Innovation's principal place of business in Massachusetts, the relationship under the Contract is centered in Massachusetts, and most of Innovation's employees that serviced Willow Midwife's account were located in Massachusetts.

14

95.    Revascent's unfair or deceptive conduct occurred primarily in Massachusetts because Revascent entered into the Agreement in Massachusetts and, during the transition, Revascent utilized Innovation's Massachusetts-based employees to unsuccessfully transition services from Innovation to Revascent.  Further, the misrepresentations about Revascent's ability to perform midwifery billing services occurred in connection with the Agreement to acquire Innovation (a Massachusetts company), while Innovation's employees worked on behalf of Revascent to transition Willow Midwife's account to Revascent, and resulted in an Agreement centered in Massachusetts.

96.    Defendants' violations of G.L. c. 93A, § 2 were willful or knowing because they intentionally misrepresented their ability to continue to perform their obligations under the Contract during and after the sale of Innovation to Revascent, in order to induce Willow Midwife into continuing its contractual relationship with Innovation and Revascent.  Innovation and Revascent also intentionally misrepresented their ability to remedy the problems they had caused with Willow Midwife's billing account at the June 21, 2024 meeting, to induce Willow Midwife into continuing the contractual relationship.

## COUNT III
## MISREPRESENTATION

97.    Willow Midwife realleges and incorporates by reference the allegations contained in the above paragraphs.

98.    Prior to the transition, Innovation falsely represented to Willow Midwife that its billing provider would not change.

99.    On information and belief, Innovation made this misrepresentation while negotiating the Agreement with Revascent.

100.    Defendants did not disclose the Agreement, and made this misrepresentation in order to induce Willow Midwife not to terminate its existing contract with Innovation.

101.    During transition, Innovation represented to Willow Midwife that the transition of services to Revascent would provide additional support to the existing team that was servicing Willow Midwife's account.

102.    Innovation made these misrepresentations while working on behalf of Revascent.

103.    On information and belief, Innovation's representations reflected Revascent's own misrepresentations about its ability to perform the necessary billing services and resources to service Willow Midwife's account.

104.     These misrepresentations induced Willow Midwife to continue obtaining billing services under the Contract, rather than transitioning to a new billing company.

105.    Revascent's representations were intended to mislead Innovation's clients, such as Willow Midwife, into continuing to obtain billing services under the Contract and in spite of Revascent's inability to perform the obligations under the Contract.

106.    Even after Revascent breached the Contract and accepted responsibility, Revascent offered a plan to bring Willow Midwife's billing current, and represented that it had both the workforce and the knowledge required to do so.

107.    Based on the representations that Willow Midwife's account would be corrected, Willow Midwife continued to use Revascent's billing services.

108.    Revascent's representations induced Willow Midwife to continue obtaining billing services under the Contract, rather than transitioning to a new billing company.

16

**REQUEST FOR RELIEF**

Wherefore, Willow Midwife respectfully requests that this Court grant the following relief:

1.      Determine that Defendants breached the Contract;

2.      Determine that Defendants misrepresented the services Willow Midwife would receive under the Contract;

3.      Award Willow Midwife its actual damages resulting from the breach;

4.      Award Willow Midwife treble damages under G.L. c. 93A, § 11 because the Defendants' violations were willful or knowing;

5.      Award Willow Midwife its reasonable attorneys' fees and costs under G.L. c. 93A, § 11; and

6.      Award such further relief as the Court may deem appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury as provided by Fed. R. Civ. P. 38(b) on all claims.

Dated: March 21, 2025                    Respectfully submitted,

WILLOW MIDWIFE CENTER FOR BIRTH AND WELLNESS AZ, LLC, and WILLOW MIDWIFE CENTER FOR BIRTH AND WELLNESS AZ CENTRAL, LLC

By their attorneys,

/s/ Christina S. Marshall
Christina S. Marshall (BBO #688348
Austin P. Anderson (BBO # 696414)
Jared D. Kadich (BBO # 707339)
ANDERSON & KREIGER, LLP
50 Milk Street, 21st Floor

17

Boston, Massachusetts 02109
Tel: (617) 621-6500
cmarshall@andersonkreiger.com
aanderson@andersonkreiger.com
jkadich@andersonkreiger.com

## <u>CERTIFICATE OF SERVICE</u>

I, Christina S. Marshall, hereby certify that I filed this document with the Clerk of the United States District Court for the District of Massachusetts on this 21st day of March 2025 by using the CM/ECF system, with service made on all parties to this action through their registration in the CM/ECF system and/or served this document via electronic mail upon the following:

John G. O'Neill
MCANGUS, GOUDELOCK & COURIE, LLC
53 State Street, Suite 1305
Boston, MA 02109
(617) 830-7439
*john.oneill@mgclaw.com*
*Attorney for Revascent LLC*

Deirdre A. Close
Croke Fairchild Duarte & Beres
191 N. Wacker Dr., 31st Floor Chicago, IL 60606
dclose@crokefairchild.com
*Attorney for Revascent LLC*

Gerald S. Frim
Klevan Law Office, PC
1340 Centre Street, Suite 103
Newton Centre, MA 02459
GFrim@klevanlaw.com
*Attorney for Innovation Billing Service Inc.*

*/s/ Christina S. Marshall*
Christina S. Marshall